## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DOLLIE A. WISE,                          )
                                         )
    Plaintiff,                           )
                                         )    CIVIL ACTION
          v.                        )    File No. 1:04-CV-2972
                                         )
OVERHEAD DOOR CORPORATION,               )
                                         )
    Defendant.                           )

## PLAINTIFF'S RESPONSE TO DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

### STATEMENT OF THE CASE

Plaintiff has filed this instant case under Title VII, ADEA and § 1981. Plaintiff alleges that she was discriminated against on the basis of her race and age and that she has been retaliated against after she filed a prior EEOC charge alleging sex and age discrimination when she was not selected for the position of Receiving Clerk/Lead or whatever the position may or may not have been titled. Defendant has filed a routine, bare-bones motion for summary judgment arguing that plaintiff cannot meet her legal evidentiary standards to escape summary judgment. Plaintiff shall respond[1] thereto.

---

[1] Plaintiff will not respond to factual information found in Defendant's brief in the

*(continued)*

## I.    INTRODUCTION

Plaintiff, an African-American, current employee who is over the age of 40[2] began her employment with defendant in February 2000 as an inventory clerk [Df SOF ¶ 4].  Plaintiff was promoted to lead on the 400 line on or around June 1, 2001 [Df SOF ¶ 7].   In or around October 2002, plaintiff was demoted from her lead position, and was replaced by Robbie Williams, a younger, white male employee [Df ex J].  Plaintiff filed an EEOC charge on, or around, April 2, 2003, alleging gender and age discrimination, *id*.  The foregoing charge was settled on or around July 2, 2003 [Hall dep. 68; Pl Complaint ¶ 9; Df Answer ¶ 9].

After plaintiff's demotion she was transferred to the Operator's Department [Pl dep. at 55].  It was believed that plaintiff would take over the Operator Position when the incumbent retired, *id*. The person did not retire, and in March 2003, plaintiff was then transferred to the Receiving Department where she performed the duties of the Receiving Clerk [Hall dep. at 45- 49; Pl dep. at 76].  Plaintiff continued

*(continued)*

introductory paragraphs.  Plaintiff stands behind her Statement of Facts in which she has refuted Defendant's Statement of Facts when warranted.

[2] Df ex J (plaintiff's first EEOC charge); Pl dep. ex 9 (plaintiff's second EEOC

*(continued)*

2

to handle all the paper work until Ms. Fleeman was hired; thereupon, plaintiff performed mostly dock work [Hall dep. at 49].

Ms. Fleeman was allegedly hired for another position, and was placed in the Receiving Clerk position in, or around, July 2003 [Fleeman dec. ¶ 5, 6].  Plaintiff trained Ms. Fleeman in the Receiving Clerk position and/or lead position [Hall dep. at 51-52; Fleeman dec. ¶ 6, 9; Pl dep. at 80-83].  Three union-member employees complained about Ms. Fleeman being placed in the Receiving Clerk position and defendant decided to post the position on or around August 7, 2003 [Fleeman dec. ¶ 7; Hall dep. at 65-66; Df SOF ¶ 65].  Plaintiff signed the bid sheet Df SOF ¶ 68; Df ex K].

Notwithstanding plaintiff's qualifications, she was not selected. Defendant selected a younger, white employee, whom plaintiff trained and who did not meet the minimum qualifications for the position (she was not forklift certified) [Duncan dep. at 76-77].   Thereupon, plaintiff filed an EEOC charge alleging race and age discrimination, as well as retaliation on, or around, January 14, 2004 [Pl dep. at 102].

_(continued)_
_____

charge).

## LEGAL ARGUMENT

I.    PROMOTION

A. The *prima facie* case

Defendant argues that plaintiff cannot make a *prima facie* case of race or age discrimination because she was not qualified for the position.  According to defendant, they were seeking an individual with strong leadership skills for this position [Df brief at 19].  Defendant further alleges because plaintiff was removed from the 400 line because of alleged performance difficulties, this consequently rendered her presumably unqualified for any[3] lead position as long as she remained employed with defendant.

Plaintiff's burden to establish a *prima facie* case is not an onerous burden (*See Tex. Dept. of Community Affairs v. Burden,* 450 U.S. 248, 253 (1981)).  The plaintiff must be allowed to establish the *prima facie* case without being burdened with the employer's justification for her non-selection (*See Walker v. Mortham*, 158 F.3d 1177, 1192-1193 (11th Cir. 1998*)).*

Defendant attempts to "short circuit" plaintiff's *prima facie* case

_____

[3] Defendant testified that all lead positions have the same requirements (Rule 30(b) (6) (hereinafter "Duncan") dep. at 56.

by interchanging alleged, prior performance[4] with the skill requirement necessary to establish a *prima facie* case (*See Clark v. Coats & Clark, Inc,* 990 F.2d 1217, 1227, n.3 (11th Cir. 1993)).    Plaintiff believes herein lies the error.

Nevertheless, at minimum plaintiff can indeed demonstrate that she was qualified for a lead position by simply adducing evidence that notwithstanding defendant's alleged reason, for her non selection, they considered[5] her application (*See Isenberg v. Knight,* 97 F.3d 436, 440 (11th Cir. 1997)).

Secondly, plaintiff is able to demonstrate that she met the qualifications for a lead position by the mere fact that she previously held a lead position, and the fact that Gerald Dunkleman had invited her to apply for another lead position even after she was demoted from

---

[4] Even the alleged performance difficulties do not even reflect upon the written job description that set forth the duties for this position [Rule (30(b) (6) hereinafter, "Duncan" dep. at 55].  Duncan testified that plaintiff could not turn in shop orders every two hours because she could not allegedly answer a question about production numbers – that is illogical since shop orders have to be submitted in written form and not given verbally, *id.*  Next defendant alleges that plaintiff could not perform the lead task of assigning employees with primary additional duties within the department [Duncan dep. at 54].  Duncan admitted that he did not know if the then supervisor, Neil Robinson, gave plaintiff that directive since this is the primary responsibility of the supervisor, *id.* According to plaintiff, Mr. Robinson did not provide her any such directives [Pl dec. ¶ 2, 3]

[5] See Duncan dep. at 505; Df SOF ¶ 68-72, 77-78, 88

the 400 line [Pl dec. ¶ 1] (*See Walker, id* at 1189, *citing East v. Romine, Inc,* 518 F.2d 332, 337 (5th Cir. 1975)).

Thirdly, plaintiff can demonstrate that she is qualified for the position because the then supervisor of the Receiving Department, Edward Hall, testified that he believed that plaintiff was better qualified than the selectee, Elaine Fleeman, because plaintiff was already doing the job[6] [Hall dep. at 71].

Fourthly, plaintiff can demonstrate that even if she did not meet the minimum qualifications for the position, and she did, the white, younger selectee, Elaine Fleeman, did not meet the minimum criteria as established by the employer.  As such, Ms. Fleeman should not have even been considered (*See Roberts v. Gadsen Memorial Hosp.,* 835 F.2d 793 (11th Cir. 1988), *on r'hg,* 850 F.2d 1549 (11th Cir. 1988)). Mr. Duncan did testify that Ms. Fleeman was not forklift certified, and that this was a requirement for the position, *id* at 76.  Duncan tries to go around this by testifying **under oath** that "Ms. Fleeman indicated to us that she had at one time been forklift certified" [Duncan dep. at 76-78].

---

[6] Mr. Hall testified that there never was any lead job – that it was always a Receiving Clerk position, and that defendant posted the job as a lead to keep plaintiff from getting the job [Hall dep. at 58].  He also testified that he had a lead person, Jesse Stone.

Ms. Fleeman has submitted a sworn declaration to the contrary [Fleeman dec. ¶ 3].

Defendant's argument that plaintiff was demoted from the 400-line because of performance difficulties is without merit. Plaintiff clearly demonstrates from the record, that she was not responsible for meeting cost goals and defendant was well aware of this fact [Hall dec. ¶10]; that all the supervisors during the relevant timeframe "mickeyed" with the numbers to get the desired results [Hall dec. ¶ 9]; that after plaintiff's demotion, the 400 line consistently did not meet its cost goals along with several other departments which had white, younger males [Hall dec. ¶ 7, 9, Pl ex C-L]. Plaintiff also demonstrates that at the time of the demotion and after, there were other departments that were not meeting their numbers and there were no demotions [Duncan dep. at 36-37].

Defendant may not rely upon "trumped up" a discriminatory demotion as a further justification for additional discrimination (*See Brill v. Lante Corp,* 119 F.3d 1266, 1272 (7th Cir. 1997)).

Plaintiff also demonstrates from the record that Mr. Robinson's

7

non-documented,[7] version of her performance is inaccurate [Pl dec. ¶ 5, 6]. Additionally, plaintiff is able to point to racial, age and gender based statements made by the decisionmakers:  Mr. Dunkleman to Mr. Robinson, "I want that old black bitch out of that job before you go home today" [Hall dep. at 109].   Plaintiff testified that Mr. Robinson called her an "old woman" [Pl dep. at 61]; and made other suggestive discriminatory statements such as: "when plaintiff was eating a banana, Mr. Robinson asked if she was going to climb a tree" [Pl dep. at 61].

Plaintiff declines to give any significance to the fact that Gerald Dunkleman and Mark DeWolfe were the same two individuals who previously promoted her to the lead 400-line position and they were also the final decisionmakers in her discriminatory demotion. Defendant, without any legal citations, is trying to "backdoor" the same actor inference.  However, plaintiff believes the same as the Eleventh Circuit, that this is a factual issue for the jury and has no relevancy during the summary judgment stage (See Williams v. Vitro. Servs. Corp, 144 F.3d 1438, 1442 (11th Cir. 1998)).

---

[7] See Hossaini v. Western Missouri Medical Center, 97 F.3d 1085, 1090 (8th Cir. 1993) ("although plaintiff's supervisor had notes allegedly documenting her substandard performance at the summary judgment stage we cannot weigh the weight of the evidence").

As such, plaintiff has met her burden to point to the existence of evidence that demonstrates that she met the minimum qualifications standard.   At this juncture, plaintiff need not prove by a slight preponderance of the evidence her *prima facie* case (*See Maddow v. Proctor & Gamble*, 107 F.3d 846, 851 (1997)).

### B.   Pretext

Defendant argues that plaintiff cannot demonstrate pretext because "the Eleventh Circuit has long held that a plaintiff can **only** demonstrate pretext in a failure to promote case by proffering evidence that she was 'clearly more qualified' than the candidate selected". Defendant purports to rely upon *Lee v. GTE Florida, Inc*, 226 F.3d 1249 (11th Cir. 2000).  Plaintiff believes that defendant has misapplied *Lee,* but she need not argue with defendant's interpretation of *Lee* because the Supreme Court has ruled over 16 years ago in a landmark case to the contrary (*See Patterson v. McLean Credit Union,* 491 U.S. 164, 190, 109 S. Ct. 2363, 2379, 105 L.Ed.2d 132 (1989)).

The Supreme Court did hold as follows:

> Although petitioner retains the ultimate burden of persuasion, our cases make clear that she must also have the opportunity to demonstrate that respondent's proffered reasons for its decision were not its true reasons, *Ibid*.  In doing so, petitioner is not limited to presenting evidence of

a certain type. This is where the District Court erred. The evidence which petitioner can present in an attempt to establish that respondent's stated reasons are pretextual may take a variety of forms [citation]... Indeed, she might seek to demonstrate that respondent's claim to have promoted a better qualified applicant was pretextual by showing that she was in fact better qualified than the person chosen for the position. The District Court erred, however, in instructing the jury that in order to succeed petitioner was **required** [emphasis in original] to make such a showing. There are certainly other ways in which petitioner could seek to prove that respondent's reasons were pretextual ... She may not be forced to pursue any particular means of demonstrating that respondent's stated reasons are pretextual.

### a.    The standard

In the Eleventh Circuit, a plaintiff may demonstrate pretext in one of three ways (*See Walker v. Nationsbank, NA,* 53 F.3d 1548, 1564 (11th Cir. 1995)):

(1)    That the proffered reasons had no basis in fact;

(2)    That the proffered reasons did not actually motivate the employment decision; or

(3)    That they were insufficient to motivate the employment decision.

### b.    This case

Plaintiff cannot be restricted to the superior qualification method

to demonstrate pretext and she can use a number of different theories to demonstrate pretext although she certainly can demonstrate that she was better qualified than the selectee.  Ms. Fleeman did not meet the objective minimum criteria[8] and should not even have been considered let alone selected (*See Roberts, id*).

Most important, plaintiff demonstrates that those managers involved in the decision-making process used racial slurs, and certainly held plaintiff and other members of her protected[9] class in low regard (*See Cooper v-Houston v. Southern Railroad,* 37 F.3d 603, 608 (11th Cir. 1994).   Moreover, the Supreme Court as well as the Eleventh Circuit has held that statements showing some discriminatory animus may be significant evidence of pretext once the *prima facie* case has been made (*See Reeves v. Sanderson Plumbing,* 530 U.S. 133, 120 S.

---

[8] Not only did Ms. Fleeman not meet the minimum qualifications for the position but she told the managers during her interviewing process that she was not interested in becoming forklift certified [Fleeman dec. ¶ 3]. Notwithstanding Mr. Duncan's blatant falsehood that Ms. Fleeman told them that she had been forklift certified at some other employer, he testified that they never saw any document or had any verification of this fact [Duncan dep. at 76].  This is further evidence of pretext since a reasonable jury could conclude that the employer did not actually compare qualifications of contenders when the decision was made to select a non-protected class applicant without adequately investigating her qualifications (*See Rutherford v. Harris County,* 197 F.3d 173, 182 (5th Cir. 2002)).

[9] Mr. Hall testified that Mr. Dunkleman wanted him not only to fire plaintiff but to fire Jesse Stone, another African-American lead, notwithstanding that Mr. Stone
*(continued)*

Ct. 2097, 2111, 147 LEd.2d (2000); *Beaver v. Rayonier,* 200 F.3d 723,

730 (11th Cir. 1999); *Jones v. Bessemer Caraway Medical Center,* 151

F.3d 1321, 1323-24 (11th Cir. 1998); *Evans v. McClain of Georgia,* 131

F.3d 957, 962 (11th Cir. 1997)).

In the case *sub judice,* Edward Hall, plaintiff's former supervisor

when she was in the Receiving Clerk position, did testify under oath

that Gerald Dunkleman in the presence of Mark DeWolfe repeatedly

used racial slurs and some of them were directed towards plaintiff [Hall

dep. at 87-88; 125].  Mr. Hall further testified that Mr. Dunkleman used

the word "nigger" regularly, and Mr. Dunkleman  even stated: "We need

to get this old black woman out of this job" (meaning plaintiff) [Hall dep.

118]("I do not give a damn how good she is, I want that troublemaking,

black bitch out of my plant").  Furthermore, Mr. Hall testified that Mr.

Dunkleman made comments that plaintiff was too, old to do the job

[10][lead positions in general[11]] [Hall dep. at 205].

---

*(continued)*

was an excellent worker [Hall dep. at 88-89].

[10] Plaintiff would even argue that this age slur rises to the level of direct evidence (*See Early v. Champion Intern Corp,* 907 F.2d 1077, 1081 (11th Cir. 1990) ("fire Early – he is too, old").  As such, she is entitled to take this claim to the jury no matter what evidence defendant has offered in rebuttal (*See Mize v. Jefferson City Bd. Of Educ,* 93 F.3d 739, 742 (11th Cir. 1996)).

[11] Duncan testified that all lead positions had a generic job description [Duncan
*(continued)*

No doubt defendant will argue that the use of racial and/or age slurs standing alone with the *prima facie* case is not sufficient to withstand summary judgment.  However, in this case, plaintiff has far more than just the decisionmakers' racial and age slurs.  Plaintiff can add to the slurs by showing that she trained Ms. Fleeman[12]; plaintiff performed[13] the duties of the position even though she was not selected for the position; and that Ms. Fleeman did not meet the minimum qualifications for the position at issue.  As such, plaintiff can demonstrate that her non selection was based upon impermissible motives (*See Beaver v. Rayonier, id* at 731; *Ross v. Rhodes Furniture, Inc,* 146 F.3d 1286 (11th Cir. 1998)).

II.    RETALIATION

Defendant argues that plaintiff's retaliation claim must fail as a matter of law because she cannot make a *prima facie* case of retaliation [Df brief at 22].    First and foremost, plaintiff has direct evidence of retaliation, and as such *McDonnell-Douglas* does not apply

*(continued)*

---

dep. ex 1].

[12] [Hall dep. at 51-52] (Mr. Dunkleman and Mr. Duncan told Mr. Hall to let plaintiff train Ms. Fleeman).  Also *See* Fleeman dec. ¶ 6, 9; Pl dep. at 80-83.

[13] Hall dep. at 47-48

13

(*See Thompkins v. Morris Brown College,* 752 F.2d 558, 563 (11th Cir. 1985); *Bell v. Birmingham Linen,* 715 F.2d 1552, 1558 (11th Cir. 1983)).

A.    Direct Evidence

      a.    **The standard**

The Eleventh Circuit has defined direct evidence as "evidence, which if believed, proves the existence of fact in issue without inference or presumptions" (*See Rollins v. TechSouth, Inc,* 833 F.2d 1525, 1528, n. 6 (11th Cir. 1987)).   The Eleventh Circuit further fine-tuned this definition by holding that it has found direct evidence where "the actions or statements of the employer reflect a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee"(*See Merritt v. Dillard Paper Company,* 120 F.3d 1181, 1189 (11th Cir. 1997)).

      b.    **The instant case**

Plaintiff relies upon her former supervisor's deposition testimony. Mr. Hall testified as follows [Hall dep. at 214-15]:

    Q:    Did anyone at Overhead Door tell you that the receiving clerk/lead was created to keep Dollie Wise from getting the position?

    A:    Paragraph number five [Hall dep. ex 1].

    Q:    All right.  Be specific.

14

A:    "I asked why did they have lead person posted with it. They said so that they knew Dollie would sign up for it, and they did not want her in the job again".

Also, Mr. Hall testified that Mr.Dunkleman was "pissed off" because of plaintiff's former EEOC charge relative to the 400 line and that they posted the position with a lead requirement to keep the Union from making them give the position to plaintiff [Hall dep. at 66-68; 122-23; 194-95].

Clearly, the actions as well as the statements of the managers involved with the decision to post the job as a lead indicated a direct intent to retaliate against plaintiff since the defendant previously settled her EEOC charge less than a month preceding her bid for the position at issue in this lawsuit.

When a plaintiff has presented direct evidence, she is entitled to take her case to the jury even if defendant produces rebuttal evidence (*See Mize, id*).

B.    Circumstantial – Evidence

Notwithstanding that plaintiff has produced direct evidence and the indirect *McDonnell-Douglas* circumstantial methodology no longer

15

applies, nevertheless, plaintiff will simply show that there is no merit to defendant's perfunctory, conclusory argument [14] [DF brief at 22-23].

### a. The standard

To establish a *prima facie* case of retaliation, a plaintiff must show that: 1) she engaged in protected activity; 2) she suffered an adverse action; 3) a causal connection between the adverse action and the protected activity (*See Hairston v. Gainesville Sun Publishing Co*, 9 F.3d 913 (11th Cir. 1993)). For causation, the Eleventh Circuit has held that plaintiff need not prove that the protected activity prompted the adverse action, rather she need only show that that the two are not wholly unrelated (*See Farley v. Nationwide Mut. Ins. Co,* 197 F.3d 1322, 1366 (11th Cir. 1999); *Weaver v. Casa Gallardo, Inc,* 922 F.2d 1515, 1524 (11th Cir. 1991), *citing Simons v. Camden County Board of Education,* 757 F.2d 1187 (11th Cir. 1985), *cert.*

---

[14] To the extent that defendant chooses to rely solely upon plaintiff's deposition testimony to refute her retaliation claim that is their misfortunate. First, and most important, plaintiff did not intend for her factual understanding or lack of factual understanding to form the basis of any of her claims; she retained attorneys for that purpose [Pl dec. ¶ 12]. Secondly, Mr. Hall's deposition and most of the discovery was conducted after plaintiff's deposition, and there is no requirement under the Federal Rules that plaintiff must supplement or amend deposition testimony (*See 1993 Advisory Committee Notes for Rule 26 (e)*). Thirdly, summary judgment should be granted if the entire record and not just the deposition testimony of the plaintiff demonstrate that there is no issue of material fact for a jury to decide (*See Tippens v. Celotex,* 805 F.2d 949, 952 (11th Cir.
*(continued)*

16

*den.,* 474 U.S. 981, 106 S. Ct. 358, 88 L.Ed.2d 338 (1985)).

To show causation during the summary judgment stage, plaintiff believes the same as the Eleventh Circuit that she need only demonstrate that the officials involved with the decision were aware of her protected activity and that there was a close proximity between this awareness and the adverse employment action (*See Clover v. Total System Services,* 176 F.3d 1346, 1354 (11th Cir. 1999); *Hairston, id* at 920).

### b.    The instant case

In the case *sub judice,* plaintiff filed an EEOC charge alleging sex and age discrimination when she was demoted from the 400 line, and this charge was settled,[15] on or around July 2, 2003 [Pl Compl. ¶ 9; Df Ans. ¶ 9; Df SOF ¶ 46, 47].    Plaintiff applied for the Receiving/Clerk Lead position on or around August 7, 2003 [Df SOF ¶ 68].    As such plaintiff has satisfied the causation standard. Accordingly, plaintiff believes that defendant's arguments are blatantly frivolous.

*(continued)*

---

1986), *r'hg den.* 815 F.2d 66 (11th Cir. 1987)).

[15] The decision-makers, Mr. Dunkleman, Don Duncan and Mr. De'Wolfe, were aware that plaintiff had filed an EEOC charge and that said charge was settled

*(continued)*

Defendant further argues without any support from the record that defendant has articulated a legitimate, non discriminatory reason for selecting Ms. Fleeman – she was the most qualified candidate [Df brief at 23].

Plaintiff to demonstrate pretext in the summary judgment context must only point to the existence of some evidence which could cause a jury to find for her to survive summary judgment (*See Maddow, id* at 851*).* Plaintiff cannot be forced into any one methodology of demonstrating pretext (*See Patterson v. McLean, id*).

Plaintiff in this case demonstrates pretext by showing defendant's retaliatory animus towards her *after* she filed an EEOC charge. Defendant's agent, Gerald Dunkleman, repetitively instructed her then supervisor, Ed Hall, to get rid of plaintiff ("***I do not give a damn how good she is, I want that troublemaking, black bitch out of my plant***")[Hall dep. at 116-17, 119]. Furthermore, Mr. De'Wolfe was even fearful that plaintiff would do it again (file an EEOC charge) [Hall dep. 112- 113].

Evidence of other acts of retaliation from the decisionmakers is

*(continued)*
_____
[Hall dep. 66-68; 112 113].

sufficient to demonstrate pretext (*See Evans v. United Airlines,* 431 U.S. 553, 557-58 (1977); *Turlington v. Atlanta Gas Light Co,* 137 F.3d 1428, 1434 (11th Cir. 1998)).   Additionally, plaintiff relies upon her previous argument made to demonstrate pretext in the age and race context:  Ms. Fleeman was not qualified; plaintiff had been performing the duties of said position; she trained Ms. Fleeman; defendant posted the position as a lead to keep plaintiff from getting the position; plaintiff was discriminatorily demoted from the 400 line for impermissible motives; and defendant deviated from it usual practices[16] in this selection (*See Beaver v. Rayonier, id* at 731).

## CONCLUSION

It is clear that defendant has failed in its burden to demonstrate with specific record evidence that there is no set of facts upon which a jury could find for plaintiff (*See Clark v. Coats & Clark,* 929 F.2d 604, 608 (11th Cir. 1991)).   Instead, defendant has misapplied binding precedent thereby heightening the plaintiff's evidentiary burden and

---

[16] The decisionmakers involved with this selection never met as a group before in other selections [Duncan dep. at 63].   The "so-called" group of managers never sought any input from Ed Hall, the supervisor of the department that housed the challenged position [Duncan dep. at 51, 52].  Also, *See* Hall dep. at 67; 70- 72.

has basically set forth its agents' version of the case which is conflict with plaintiff and her witnesses' version.

Consistent with binding Eleventh Circuit precedent, no burden shifted to plaintiff (*See Coats, id* at 698).   However, out of an abundance of caution, plaintiff alternatively pointed to the existence of evidence that could cause a jury to find for her (*See Maddow, id* at 851).   As such Defendant's Motion for Summary Judgment must be denied as a matter of law.

Respectfully submitted this ____ day of June 2005.

_____
ETHEL L. MUNSON
Attorney for Plaintiff
Georgia Bar No. 529625

1541 The Candler Building
127 Peachtree Street, NE
Atlanta, GA 30303
(404) 588-0049

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DOLLIE A. WISE,                 )
)
    Plaintiff,             )
)     CIVIL ACTION
       v.           )     File No. 1:04-CV-2972
)
OVERHEAD DOOR CORPORATION,  )
)
    Defendant.

## PLAINTIFF'S EXHIBITS

| | | |
|---|---|---|
| I. | PLAINTIFF'S STATEMENT OF FACTS | A |
| II. | PLAINTIFF'S DECLARATION | B |
| III. | EDWARD HALL'S DECLARATION | C |
| IV. | MONTHLY COST ANALYSIS | D |
| V. | PRODUCTION MEETING LOG 10/02* | E |
| VI. | PRODUCTION MEETING LOG 1/03* | F |
| VII. | PRODUCTION MEETING LOG 2/03* | G |
| VIII. | PRODUCTION MEETING LOG 3/03* | H |
| IX. | PRODUCTION MEETING LOG 4/03* | I |
| X. | PRODUCTION MEETING LONG 5/03* | J |
| XI. | PRODUCTION MEETING LOG 6/03* | K |
| XII. | PRODUCTION MEETING LOG 9/03* | L |
| XIII. | ELAINE FLEEMAN'S DECLARATION | M |
| XIV. | EDWARD HALL'S DEPOSITION | N |
| XV. | PLAINTIFF'S DEPOSITION | O |

* Documents are joint Exhibit 1 attached to Ed Hall's Affidavit

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DOLLIE A. WISE,                          )
                                         )
    Plaintiff,                   )
                                         )   CIVIL ACTION
        v.                    )   File No. 1:04-CV-2972
                                         )
OVERHEAD DOOR                            )
CORPORATION,                             )
                                         )
    Defendant.                   )

### CERTIFICATE OF SERVICE

The "Notice of Electronic Filing" that will be automatically generated by the court's "Electronic Filing System" in response to the filing of **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** will effectuate service upon all opposing attorneys of record as all such attorneys are filers within the meaning of LR 5.1.A(3)(N.D. Ga.).

This ____ day of June 2005.

ETHEL L. MUNSON
Attorney for Plaintiff
Georgia Bar No. 529625

1541 The Candler Building
127 Peachtree Street, NE
Atlanta, GA 30303
(404) 588-0049